IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ERICH SMITH, FRANK E.
GARWOOD, JR., MARIBEL
LORENZO, AND DR. DANIEL
DONOFRIO,

No. 1:21-cv-19457

      Plaintiffs,

v.

**OPINION**

PRESIDENT JOSEPH R. BIDEN,
JR. (in his official capacity
and any successor to the
Office of the President),

      Defendant.

---

**<u>APPEARANCES</u>:**

**DANA WEFER**
LAW OFFICES OF DANA WEFER
375 SYLVAN AVE
ENGLEWOOD CLIFFS, NJ 07632
973-610-0491

*On behalf of Plaintiffs, Erich Smith, Frank E. Garwood, Jr., Maribel Lorenzo, and Dr. Daniel Donofrio*

**ANGELA JUNEAU**
DOJ-USAO
OFFICE OF THE U.S. ATTORNEY, DISTRICT OF NEW JERSEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102

*On behalf of Defendant, President Joseph R. Biden, Jr.*

**INTRODUCTION**

This matter comes before the Court upon a Motion for Temporary Restraining Order and/or for a Preliminary Injunction (ECF No. 4, "the Motion") filed by Plaintiffs, Erich Smith, Frank E. Garwood, Jr., Maribel Lorenzo, and Dr. Daniel Donofrio (collectively "Plaintiffs") seeking to enjoin Defendants from enforcing Executive Order 14042 and Executive Order 14043 mandating COVID-19 vaccination for federal employees and employees of federal contractors. For the reasons stated herein, the Motion is denied.

I.   **PROCEDURAL HISTORY**

On October 29, 2021, Plaintiffs filed a Verified Complaint and on the same date, an Amended Verified Complaint for Declaratory and Injunctive Relief, against Defendant, President Joseph R. Biden, Jr., ("Defendant" or "President") seeking to enjoin Executive Orders 14042 and 14043 issued on September 9, 2021 (collectively the "Executive Orders" or "mandates"). (ECF No. 1, "Complaint" and ECF No. 2, "Amended Complaint" ¶¶ 1-3). Plaintiffs' Amended Complaint contained a single Count claiming the Executive Orders are unconstitutional and violate their Fifth Amendment rights of privacy and liberty, including the right to refuse medical procedures and the right to protect private medical information. (Id. ¶ 96-104).

On November 3, 2021, Plaintiffs filed this Motion. (ECF No. 4). On November 4, 2021, the Court issued an Order to Show Cause why a temporary restraining order and/or preliminary injunction should not be issued and directed Plaintiffs' counsel to give notice to Defendant, and/or file an affidavit pursuant to Federal Rule of Civil Procedure 65(b)(1)(B) as to efforts to do so and to effectuate service upon Defendant pursuant to Federal Rule of Civil Procedure 4(i). (ECF No. 6). The Court further set a briefing schedule and hearing for November 8, 2021. (ECF No. 6).

On November 5, 2021, the Defendant filed Opposition to the Motion. (ECF No. 9, "Def. Opp. Br."). On November 6, 2021, Plaintiffs filed a Reply Brief (ECF No. 12, "Pl. Reply") and a Motion for Leave to File a Second Amended Complaint (ECF No. 13, "Motion to Amend") to name Merrick B. Garland, in his official capacity as Attorney General of the United States, Kilolo Kijakazi, in her official capacity as Acting Commissioner of the Social Security Administration, and the United States of America as Defendants, and to further add a claim that the Executive Orders violate the Plaintiffs' Fifth Amendment Right to Equal Protection. (ECF No. 13-2). On November 7, 2021, Plaintiffs filed a Motion to Expedite their Motion to Amend filed the day prior. (ECF No. 14).

Oral argument was held on November 8, 2021. As of the date of the hearing, Plaintiffs had not complied with Federal Rule of Civil

Procedure 65(b)(1)(B) as to the proposed newly added Defendants, and thus, the Court considers the request for relief as to those Defendants to be ex parte and without notice. For purposes of this Motion, the Court will consider the proposed Second Amended Complaint with the newly added Defendants and claims.

## II.  <u>FACTUAL BACKGROUND</u>

On September 9, 2021, the President issued two Executive Orders. First, Executive Order 14043 "Requiring Coronavirus Disease 2019 Vaccination for Federal Employees." Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). Executive Order 14043 states that "it is the policy of my Administration to halt the spread of the coronavirus disease 2019 (COVID-19), including the B.1.617.2 (Delta) variant, by relying on the best available data and science-based public health measures." <u>Id.</u> § 1. Executive Order 14043 further states "the health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, are foundational to the efficiency of the civil service." <u>Id.</u> Thus, Executive Order 14043 provides "in light of public health guidance regarding the most effective and necessary defenses against COVID-19, I have determined that to promote the health and safety of the Federal workforce and the efficiency of civil service, it is necessary to require COVID-19 vaccination for all Federal employees, subject to such exceptions as required by

law." Id. The Safer Federal Workforce Task Force issued guidance on September 13, 2021 requiring federal employees be fully vaccinated no later than November 22, 2021. U.S. SAFER FED. WORKFORCE TASK FORCE, COVID-19 WORKPLACE SAFETY: AGENCY MODEL SAFETY PRINCIPLES (Sept. 2021). Per additional guidance, "people are considered fully vaccinated for COVID-19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single dose vaccine." U.S. SAFER FED. WORKFORCE TASK FORCE, COVID-19 WORKPLACE SAFETY: GUIDANCE FOR FEDERAL CONTRACTORS AND SUBCONTRACTORS, 4 (Sept. 2021). Employees must receive the second dose or single dose of their vaccine no later than November 8, 2021 to meet the deadline. U.S. SAFER FED. WORKFORCE TASK FORCE, FAQ, VACCINATIONS, https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Nov. 8, 2021).

Executive Order 14042 "Ensuring Adequate COVID Safety Protocols for Federal Contractors" was issued on the same date. Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 9, 2021). Executive Order 14042 states that "this order promotes economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract." Id. § 1. Thus, Executive Order 14042 directs that federal departments and agencies "shall . . . include a clause that the contractor and any subcontractors . . .

shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force." Id. § 2. The Safer Federal Workforce Task Force issued guidance on September 23, 2021 requiring covered contractor employees be fully vaccinated no later than December 8, 2021. U.S. SAFER FED. WORKFORCE TASK FORCE, COVID-19 WORKPLACE SAFETY: GUIDANCE FOR FEDERAL CONTRACTORS AND SUBCONTRACTORS, 5 (Sept. 2021). The deadline was subsequently extended to January 4, 2022. (EFC No. 12, "Def. Opp. Br." at 8).

Plaintiffs Erich Smith, Frank E. Garwood, Jr.  and Dr. Donofrio (collectively, the "employee Plaintiffs") are federal employees subject to Executive Order 14043. (ECF No. 2, "Amended Complaint" ¶ 9). Plaintiff Smith works for the Department of Justice, Federal Bureau of Prisons as a foreman for a factory within the prison. (Id. ¶ 92). Plaintiff Garwood is an employee of the Department of Justice, Federal Bureau of Prisons as a training instructor. (Id. ¶ 93). Plaintiff Dr. Donofrio is a chiropractor employed by the Social Security Administration. (Id. ¶ 95). Plaintiff Maribel Lorenzo (the "contractor Plaintiff") is employed as an underwriter by Horizon Blue Cross and Blue Shield and is subject to Executive Order 14042 due to her employer's federal contracts. (Id. ¶ 94). Plaintiffs do not want to be vaccinated for "a range of personal reasons." (ECF No. 2, "Amended Complaint" ¶¶ 91-95; ECF No. 4, "Pl. Moving Br." at 7). None of the Plaintiffs

raise or present issues with respect to a request for an exemption, for example, on religious or medical grounds, from the mandate. (Id.). There are no allegations in the Complaint, Amended Complaint, proposed Second Amended Complaint, or in any of the briefs filed by Plaintiffs, that indicated any of the Plaintiffs had submitted or intended to submit a request for an exception. (Id.). However, upon questioning by the Court as to this issue during oral argument, Plaintiffs' counsel advised for the first time that one or more of the Plaintiffs had in fact submitted a request for an exception. [1] The Court issued an Order (ECF No. 17) directing Plaintiffs' counsel to provide information related to any exceptions requested by the Plaintiffs and the status thereof. On November 8, 2021, Plaintiffs' counsel filed a Declaration (ECF No. 18) stating: (1) Plaintiff Lorenzo was not able to file an exception request as her employer would not accept it; (2) Plaintiff Donofrio submitted an exception request on September 28, 2021; (3) Plaintiff Smith submitted an exception request on September 15, 2021; and (4) Plaintiff Garwood filed an exception request on September 15, 2021. (Id.). All submitted requests remain pending. (Id.)

---

[1] The Court expressed serious concerns regarding the Plaintiffs' seemingly purposeful failure to previously disclose this information.

### III.  <u>**PARTIES' ARGUMENTS**</u>

#### A. Plaintiffs' Arguments

Plaintiffs do not dispute that the Supreme Court's decision in <u>Jacobson v. Massachusetts</u>, 197 U.S. 11 (1905), which has been relied upon by many courts in reviewing employer mandates for COVID-19 vaccination, is controlling precedent by which this Court is bound. Rather, Plaintiffs argue <u>Jacobson</u> does not apply because the COVID-19 vaccines are not actually vaccines "because they do not fall under any relevant statutory definition or traditional dictionary definition of the word 'vaccine.'" (ECF No. 2, "Amended Complaint" ¶¶ 31-47).  Instead, Plaintiffs allege they are "gene therapy products." (<u>Id.</u>).  Plaintiffs therefore argue that the Court should apply strict scrutiny in reviewing the Executive Orders. (ECF No. 4, "Pl. Moving Br." at 5).

Plaintiffs argue that the Executive Orders violate the Due Process Clause of the Fifth Amendment because they intrude on Plaintiffs' fundamental rights of liberty and privacy to make their own healthcare decisions and decline unwanted medical procedures. (<u>Id.</u> at 8). Plaintiffs argue that the Executive Orders cannot survive strict scrutiny because even if it is assumed that the government has a compelling interest in combating the spread of COVID-19 and protecting the health of its citizens, the Plaintiffs' liberty and privacy rights are stronger and more compelling than

that of the government. (Id. at 12-26). In support, Plaintiffs argue: (1) there is uncertainty concerning the efficacy and duration of protection of the vaccines; (2) the vaccines are experimental and novel in nature; (3) the vaccines carry risks; (4) the vaccines are likely to cause short-term illness; (5) the vaccines are manufactured by corporations they allege have extensive criminal records or no track record; (6) the U.S. Food and Drug Administration, the agency tasked with ensuring pharmaceutical safety, is plagued with scandals and failures; (7) the Executive Orders are not narrowly tailored as they fail to adequately consider "natural immunity"; (8) there are a wide range of treatments for COVID-19 available; (9) there is a low infection fatality rate for COVID-19; and (10) the government has navigated similar viruses without mandating vaccination. (Id. at 13-26).

Plaintiffs further argue in the proposed Second Amended Complaint that the mandates "create two groups of people and set forth government-mandated different treatment between the groups . . . based on Plaintiffs' exercise of a fundamental right." (ECF No. 13-2, "Second Amended Complaint" ¶ 27).

Plaintiffs argue that they face irreparable harm in that they are at risk of becoming unemployed and will be "unemployable in two-thirds of existing jobs." (ECF No. 4, "Pl. Moving Br." at 7).

Plaintiffs argue that granting injunctive relief will preserve the status quo and pose no harm to the government. (Id.).

### B. Defendant's Opposition

Defendant argues that this Court lacks jurisdiction and/or Plaintiffs have no standing to assert claims seeking declaratory or injunctive relief against the President in his official capacity. (ECF No. 4, "Def. Opp. Br." at 11-13). Defendant further argues that the Civil Service Reform Act ("CSRA") precludes Plaintiffs from bringing their claims in this Court. (Id. at 13-15). Finally, Defendant argues that Plaintiffs' claims are not ripe as they have neither sought nor been denied an exemption from the mandate and they have not been subject to or notified of any discipline as of this date. (Id. at 16-18).

Defendant further argues that injunctive relief is not warranted as Plaintiffs are not likely to succeed on the merits of their claims. Defendant argues that vaccine mandates have long survived rational basis review under Jacobson, (id. at 18-29); that Plaintiffs have failed to show irreparable harm, (id. at 29-37); and that the balance of equities and public interest in stemming the spread of COVID-19 far outweigh any alleged harm by Plaintiffs, (id. at 37-41).

### C. Plaintiffs' Reply

In Plaintiffs' reply, Plaintiffs claim that the well-established exception for mandatory vaccinations is limited to instances of the reasonable exercise of a state's police power and that the federal government has no such power. (ECF No. 12, "Pl. Reply" at 4-6). Plaintiffs further allege the unconstitutional conditions doctrine establishes irreparable harm as the coercion to be vaccinated is the irreparable harm. (Id. at 3-4, 8). Plaintiffs argue that their claims are ripe, that the CSRA does not apply since no adverse employment action has yet occurred, and that they should not have to wait for adverse employment action to be taken in order to challenge the mandates. (Id. at 8-9, n.1). Plaintiffs further argue that as to Plaintiff Lorenzo, "who is subject to the Contractor Mandate, it is not clear who she could enjoin other than the President himself" and urge the Court to enjoin the President from enforcing the mandate. (Id. at 9-13).

### IV.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. FED. R. CIV. P. 65; <u>Vuitton v. White</u>, 945 F.2d 569, 573 (3d Cir. 1991).

Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." <u>American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421,

1427 (3d Cir. 1994) (quoting Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988)). To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004).

While courts must balance all four factors, Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982), this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. FM 103.1, Inc. v. Universal Broad., 929 F. Supp. 187, 193 (D.N.J. 1996) (quoting Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990)). A court should only issue an injunction "if the plaintiff produces evidence to convince the district court that all four factors favor preliminary relief." AT&T v. Winback & Conserve Program, 42 F.3d 1421, 1427 (3d Cir. 1994).

V.   **DISCUSSION**

A. Jurisdiction, Standing and Ripeness

(1)   Ripeness

Defendant argues the Plaintiffs' claims are not ripe because Plaintiffs have not been terminated and/or no decision has been issued as to their request for an exception.

The ripeness doctrine limits judicial power to resolve actual cases and controversies, prohibiting courts from resolving hypothetical or speculative disputes. U.S. Const. art. III, § 2. Reviewing ripeness is a two-step evaluation: the hardship of denying review and whether the issues are fit for review. Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1969). The hardship of denying review requires a threat of constitutional injury that is "credible," and not merely "speculative." Artway v. Attorney Gen., 81 F.3d 1235, 1247 (3d Cir. 1996). The moving party "need not have suffered a 'completed harm'" in order to present a ripe claim, Presbytery of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994) (citing Armstrong World Industries, Inc. v. Adams, 961 F.2d 405, 412 (3d Cir. 1992)), simply one that is "certainly impending," Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983). "[W]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed

13

by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Artway, 81 F.3d at 1247 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). The second factor for evaluating ripeness is whether the issue is fit for judicial review. Abbott Labs., 387 U.S. at 149. "The principal consideration is whether the record is factually adequate to enable the court to make the necessary legal determinations. The more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe, and vice-versa." Artway, 81 F.3d at 1249.

The Court finds the claims of the Plaintiffs ripe for review. Plaintiffs seek to enjoin the entire process set forth in Executive Orders 14042 and 14043, including the exception process. The contractor Plaintiff alleges she has been precluded from submitting an exception to her employer and thus faces the choice of compliance or potential loss of employment. Thus, the Plaintiffs have alleged a course of conduct and there exists a credible threat of adverse action. Further, the case presents a pure legal question and the record is adequate. See, e.g., Messina v. The College of N.J., 2021 WL 4786114, at *3 (D.N.J. Oct. 14, 2021) (deciding application for injunctive relief in case involving COVID-19 vaccine mandate issued by university where the plaintiffs had

14

received exemptions from the vaccine requirement); Bauer v.
Summey, 2021 WL 4900922, at *2 (D.S.C. Oct. 21, 2021) (deciding
application for injunctive relief in case involving COVID-19
vaccine mandate issued by employer where plaintiffs' requests for
exemptions remained pending); Klaasen v. Trustees of Indiana
Univ., 2021 WL 4073926, at *14-15 (N.D. Ind. 2021)(deciding issues
of standing related to COVID-19 vaccine mandate challenge where
some plaintiffs sought and received an exception and others had
not). The Court finds this factor is more appropriately considered
in the context of irreparable harm.

### (2)   Injunctive Relief Against the President

As Defendant has argued, "a court -- whether via injunctive
or declaratory relief -- does not sit in judgment of a President's
executive decisions." Newdow v. Roberts, 603 F.3d 1002, 1012 (D.C.
Cir. 2010) (citing Mississippi v. Johnson, 71 U.S. (4 Wall.) 475,
499 (1867)). "An attempt on the part of the judicial department
. . . to enforce the performance of [executive and political]
duties by the President [is] 'an absurd and excessive
extravagance.'" Mississippi, 71 U.S. (4 Wall) at 499. In Franklin
v. Massachusetts, the Supreme Court declined to determine whether
jurisdiction exists to enjoin the President; however, the Court's
decision and language left open the avenue to claim jurisdiction
in suits against heads of Executive agencies. 505 U.S. 788, 802-

03 (1992). For purposes of this Motion, the Court considers
Defendant's argument in this regard moot as to the claims brought
by the employee Plaintiffs since the Second Amended Complaint
proposes to name their employing agencies as defendants.

However, the filing of the proposed Second Amended Complaint
does not cure this defect as to Plaintiff Lorenzo, whose claims
lie solely against the President. Plaintiff Lorenzo claims "it is
not clear who she could enjoin other than the President himself.
She only knows that she has been told she is subject to the Mandate
because Horizon BlueCross Blue Shield holds government contracts."
(ECF No. 12, "Pl. Reply" at 11). Plaintiff provides no legal
authority by which this Court could grant injunctive relief against
the President because she cannot determine the proper defendant
against whom to bring suit. As such, the Court finds it lacks
jurisdiction over the contractor Plaintiff's claims and/or she
fails to state a claim upon which injunctive relief can be granted.
Therefore, the remainder of this Opinion will only address the
employee Plaintiffs' claims under Executive Order 14043 and will
not address Executive Order 14042.

### (3)   The Civil Service Reform Act

Defendant argues that the claims of the employee Plaintiffs
are precluded by failure to exhaust their administrative remedies
under the CSRA. Congress enacted the CSRA to create "a framework

for evaluating personnel actions taken against federal employees."
Kloeckner v. Solis, 568 U.S. 41, 44 (2012). The "comprehensive and
exclusive" remedial scheme, Grosdidier v. Chairman, Broad. Bd. of
Governors, 560 F.3d 495, 497 (D.C. Cir.), cert. denied, 558 U.S
989 (2009), enumerates thirteen "prohibited personnel practices,"
which, if taken against a federal employee, must be brought before
the Office of Special Counsel ("OSC") in the first instance, 5
U.S.C. § 2302(b). If OSC determines that there are reasonable
grounds to believe that a violation has occurred, then it "shall
report the determination together with any findings or
recommendations" to the Merit Systems Protection Board ("MSPB")
and the employing agency. Id. § 1214(b)(2)(B). Only if the employee
exhausts this administrative procedure and does not prevail before
the MSPB, may they pursue judicial review in the Federal Circuit.
Id. §§ 1214(c), 7703(a)(1).

However, in this case adverse action is being threatened but
has not yet been taken against the employee Plaintiffs. The
Plaintiffs do not, as of yet, have cognizable claims to be brought
under the CSRA. It is further illogical to suggest that the
subordinate agencies of the Executive Branch have exclusive
jurisdiction to determine whether an Executive Order issued by the
President, that they have been directed to implement, is
constitutional. Thus, the Court rejects the Defendant's argument
that the claims of the employee Plaintiffs are barred by the CSRA.

### B. Injunctive Relief

#### (1)  Likelihood of Success on the Merits

Based upon <u>Jacobson</u>, as well as persuasive authority from other circuits which have addressed employer mandates for the COVID-19 vaccine, this Court concludes that the employee Plaintiffs have not met their burden to show they are likely to succeed on the merits.

In <u>Jacobson</u>, the seminal case regarding vaccine mandates, the Supreme Court upheld a Massachusetts statute which authorized the board of health of any town to require citizens to be vaccinated against smallpox as necessary for the public health and safety. <u>Jacobson</u>, 197 U.S. at 12.  Jacobson refused to be vaccinated and was criminally charged and convicted. <u>Id</u>. at 13.  On appeal, Jacobson argued that the vaccine mandate violated his constitutional rights. <u>Id</u>. at 26.  The Supreme Court rejected Jacobson's arguments and held that the State had the right to impose vaccine mandates. <u>Id</u>. at 27. The Court noted "in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual with respect of his liberty may, at times, under pressure of great dangers, be subjected to such restraint to be enforced by reasonable regulations as the safety of the general public may demand." <u>Id</u>. at 29. Based upon <u>Jacobson</u>, courts across the country have held

that there is no fundamental right to refuse a COVID-19 vaccination. Indeed, every court that has considered the constitutionality of a COVID-19 vaccine mandate by an employer or university has deemed Jacobson controlling, rejected claims of a fundamental right to refuse a vaccine, and applied a rational basis standard of review. See, e.g., Norris v. Stanley, 2021 WL 4738827, at *2-3 (W.D. Mich. Oct. 8, 2021); Messina, 2021 WL 4786114, at *8-9; Does 1-6 v. Mills, 2021 WL 4783626, at *12-13 (D. Me. Oct. 13, 2021); Mass. Corr. Officers Fed. Union v. Baker, 2021 WL 4822154, at *6-7 (D. Mass. Oct. 15, 2021); Williams v. Brown, 2021 WL 4894264, at *8-9 (D. Or. Oct. 19, 2021).

Plaintiffs argue that Jacobson does not apply and strict scrutiny review applies because (1) the COVID-19 vaccines are not actually vaccines but are "gene therapy products" and (2) the federal government lacks police power. Both arguments fail.

First, Plaintiffs provide no medical authority or competent evidence to support the argument that COVID-19 vaccines are not actually vaccines. In addition, courts have rejected such arguments. See Messina, 2021 WL 4786114, at *7-8.

Second, Plaintiffs' argument that Jacobson does not apply because the federal government lacks police power fails because the government's role and source of authority in this case is that of an employer under 5 U.S.C §§ 3301, 3302, 7301. See We the

19

Patriots, USA, Inc. v. Hochul, 2021 WL 5121983, at *18 (2nd Cir. Nov. 4, 2021) (finding the state's actions as an employer in mandating public employee vaccination to be "considerably narrower" than the city-wide mandate in Jacobson). It has long been recognized that when the government acts as an employer, "there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" Engquist v. Or. Dept. of Agr., 553 U.S. 591, 598 (2008) (quoting Cafeteria & Rest. Wkrs. v. McElroy, 367 U.S. 886, 896 (1961)). There are "unique considerations applicable when the government acts as employer as opposed to sovereign." Id. at 598. The government has both "far broader powers," Waters v. Churchill, 511 U.S. 661, 671 (1994), and "significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large," Engquist, 553 U.S. at 598; see also Kelley v. Johnson, 425 U.S. 238, 244-48 (1976) (stating the government's role as employer is "highly significant" and applying essentially a rational basis test in such circumstances). "The extra power the government has in this area comes from the nature of the government's mission as employer." Engquist, 553 U.S. at 598. The Supreme Court has explained,

20

> The government's interest in achieving its
> goals as effectively and efficiently as
> possible is elevated from a relatively
> subordinate interest when it acts as sovereign
> to a significant one when it acts as employer.
> Given the commonsense realization that
> government offices could not function if every
> employment decision became a constitutional
> matter, constitutional review of government
> employment decisions must rest on different
> principles than review of restraints imposed
> by the government as sovereign.

Id. at 598-99 (citations and quotations omitted); see also Mahoney

v. Sessions, 817 F.3d 9305, 879-880 (9th Cir. 2017) (discussing

the lesser standard of review of constitutional claims when the

government is not acting as a sovereign lawmaker); Bonidy v. U.S.

Postal Serv., 790 F.3d 1121, 1126 (10th Cir. 2015) (applying lesser

standard of review where USPS prohibited firearms on Postal

Property and stating "[a]s a government-owned business acting as

a proprietor rather than as a sovereign, the USPS has broad

discretion to govern its business operations according to the rules

it deems appropriate"); Wasatch Equality v. Alta Ski Lifts Co., 55

F. Supp. 3d 1351, 1362-64 (D. Utah 2014) (applying lesser standard

of review where the federal government is acting as the owner of

Its property and not as a lawmaker).

Thus, contrary to Plaintiffs' arguments, the Court finds that

the federal government has at least as much, if not broader, power

and deference in this instance where it is acting as an employer

than the State of Massachusetts had in Jacobson in exercising its police power. See Mass. Corr. Officers Fed. Union, 2021 WL 4822154, at *6-7 (applying rational basis test to review COVID-19 mandate for State employees based on the State's status as an employer). As such, the Court finds rational basis review applies.

Under rational basis review, the action of the government "need only be rationally related to a legitimate government interest." Wilce v. Dir., Off. of Workers' Comp. Programs, 144 F. App'x 223, 226 (3d Cir. 2005) (citing Heller v. Doe, 509 U.S. 312, 320 (1993)). There is a presumption of constitutionality and "the burden is on the one attacking [it] to negative every conceivable basis which might support it." Heller, 509 U.S. at 320 (quotation omitted). Here, there can be no serious question that the government has a legitimate interest in preventing the spread of COVID-19. The Supreme Court has described the government's interest in combating the spread of COVID-19 as "compelling." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1614 (2020); see also Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020) (describing curbing the spread of COVID-19 as "unquestionably a compelling interest"). Indeed, Plaintiffs assume for purposes of this motion that the government's interest is compelling. (ECF No. 4, "Pl. Moving Br." at 12). Thus, the only question is whether the mandates are rationally related to the government's interest in stemming the spread of COVID-19. This

Court, like every other Court that has considered the issue to date, easily concludes that such a rational relationship exists -- vaccines are a safe and effective way to prevent the spread of COVID-19. Courts have repeatedly refused to enjoin an employer's COVID-19 vaccine mandate, provided they contain legally required exemptions, finding they pass muster under the rational basis test. See, e.g., Mass. Corr. Officers Fed. Union, 2021 WL 4822154, at *8; Does 1-6, 2021 WL 4783626, at *18; Harsman v. Cincinnati Child.'s Hosp. Med. Ctr., 2021 WL 4504245, at *6 (S.D. Ohio Sept. 30, 2021); Norris, 2021 WL 4738827, at *4; Williams, 2021 WL 4894262, at *11; Maniscalo v. The N.Y.C. Dept. of Ed., 2021 WL 4344267, at *6 (E.D.N.Y. Sept. 23, 2021); Andrew-Rodney v. Hochul, 2021 WL 5050067, at *9 (N.D.N.Y. Nov. 1, 2021); Johnson v. Brown, 2021 WL 4846060, at *27 (D. Or. Oct. 18, 2021); Kehearty v. Regents of Cal., 2021 WL 4714664, at *9 (C.D. Cal. Sept. 29, 2021); see also We the Patriots, 2021 WL 5121983 at *21. Plaintiffs provide no legal or factual basis to distinguish the federal government's issuance of a vaccine mandate for its workforce from that of any other employer that has taken the same action or to compel a different result in this case.

Plaintiffs also fail to show a likelihood of success on the merits as to their equal protection claim alleged in Count Two of the proposed Second Amended Complaint. The first step to evaluate an equal protection claim is to determine the standard of review.

Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir. 1993). Since Plaintiffs' claims do not involve a suspect class or fundamental right, the same rational basis standard of review applies. Id. Thus, for the same reasons set forth above, Plaintiffs are not likely to succeed on the merits of this claim. See Does 1-6, 2021 WL 4783626, at *16 (applying rational basis review to equal protection claim by employees related to employer's COVID-19 mandate).

For all these reasons, the employee Plaintiffs have failed to show they are likely to succeed on the merits.

### (2)   Irreparable Harm

Consideration of the irreparable harm factor heavily weighs against injunctive relief. Irreparable harm is defined as "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). As such, "the preliminary injunction must be the only way of protecting plaintiff from harm." Id. The harm alleged by the employee Plaintiffs is that they would be required to "undergo an irreversible medical procedure that carries risk or lose their jobs and become effectively disqualified from two-thirds of American jobs. Either road constitutes irreparable harm." (ECF No. 4, "Pl. Moving Br." at 27-28). As a preliminary matter, the fact

24

that one or more of the Plaintiffs have sought exceptions negates any imminent harm, let alone irreparable harm, since the most recent guidance indicates agencies should refrain from initiating enforcement action if the employee has received an exception and/or the agency is considering an exception request from the employee. U.S. OFFICE OF PERSONNEL MANAGEMENT, Guidance on Enforcement of Coronavirus Disease 2019 Vaccination Requirements for Federal Employees – Executive Order 14043 (2021).

Plaintiffs argue the unconstitutional conditions doctrine applies and that the coercion itself is the irreparable harm. (ECF No. 12, "Pl. Reply" at 1). Plaintiffs are undeniably being presented with a difficult choice -- comply with the vaccine mandate or risk losing their employment. They are, however, presented with a choice and are not being coerced to give up a fundamental right since there is no fundamental right to refuse vaccination. See Klaasen, 2021 WL 4073926, at *23-26 (rejecting student's argument that university's vaccine mandate violated the unconstitutional conditions doctrine); Norris, 2021 WL 4738827, at *3 (rejecting employee's unconstitutional conditions argument

because a vaccine mandate does not violate a fundamental right); Andre-Rodney, 2021 WL 5050067, at *7 (same).[2]

Further, Plaintiffs ignore well established precedent that "loss of employment itself is not sufficient to give rise to irreparable injury." Hong Zhuang v. EMD Performance Materials Corp., 2018 WL 3814282, at *11 (D.N.J. Aug. 10, 2018); see also Sampson v. Murray, 415 U.S. 61, 92 n.68 (1974). To date, every court that has considered the allegation that the potential loss of employment due to an employee's decision not to comply with an employer's COVID-19 vaccine mandate constitutes irreparable harm has rejected it. See, e.g., Harsman, 2021 WL 4504245, at *4; Norris, 2021 WL 4738827, at *3; Williams, 2021 WL 4894262, at *10-11; Mass. Corr. Officers Fed. Union, 2021 WL 4822154, at *7-8; Does 1-6, 2021 WL 2782626, at *16-17; Andre-Rodney, 2021 WL 5050067, at *8. This Court agrees and finds no factual or legal reason to depart from this well-established precedent.

Finally, the fact that Plaintiffs waited nearly two (2) months to seek relief dispels any claim of irreparable harm. The Executive Orders were issued on September 9, 2021. Plaintiffs did not file a Complaint until October 29, 2021 and did not file a motion for

---

[2] The Court agrees with the Defendant that Plaintiffs' comparison of the vaccine mandate to forcible and invasive medical procedures is misplaced. See Klaasen, 2021 WL 3072926, at *25. The mandates do not force Plaintiffs to receive a medical procedure. Rather, they may seek an exemption or may choose to seek other employment.

injunctive relief until November 3, 2021, just five (5) days prior to the date by which they must receive the vaccine in order to comply with the mandate. "[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic, speedy action." Lanin v. Borough of Tenafly, 2013 WL 936363, at *3 (3d Cir. 2013) (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985)); see also Messina, 2021 WL 4786114, at *9 (considering Plaintiff's delay in seeking injunctive relief related to COVID-19 mandates for college students as negating irreparable harm); Child.'s Health Defense, Inc. v. Rutgers, the State Univ. of N.J., 2021 WL 4398743, at *7 (D.N.J. Sept. 27, 2021) (same). Plaintiffs offer no excuse for their delay in seeking relief in this case.[3]

For all these reasons, the employee Plaintiffs fail to show irreparable harm.

### (3)  Balance of Equities and Public Interest

The third and fourth factors for the issuance of injunctive relief merge when the government is the opposing party. Nken v.

---

[3] Even assuming the contractor Plaintiff identified an appropriate defendant against whom the Court could issue injunctive relief, her claim would nevertheless fail as she too cannot show irreparable harm.

<u>Holder</u>, 556 U.S. 418, 435 (2009). Given the Court's findings as to the likelihood of success on the merits and irreparable harm factors, the Court will only briefly address these factors. The federal government employs over 4 million people. Julie Jennings & Jared C. Nagel, CONG. RSCH. SERV., R43590, Federal Workforce Statistics Sources: OPM and OMB 17 (2021). The stated goal of the vaccine mandate is to prevent the spread of COVID-19 and keep people safe. Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). As stated in Executive Order 14043, "[t]he health and safety of the Federal workforce, and the health and safety of the members of the public with whom they interact, are foundational to the efficiency of the civil service." Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). Given the ongoing COVID-19 pandemic, the balance of equities and public interest far outweigh the interests of the employee Plaintiffs. In this case, the granting of injunctive relief would likely increase the risk of harm to the public.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, the Court has no authority to enjoin any action by the President as to any of the Plaintiffs' claims. Further, the employee Plaintiffs have not met their burden to show that a temporary restraining order and/or preliminary

injunction is warranted. As such, Plaintiffs' motion is denied. An

appropriate order will follow.


Dated: 11/8/2021                      s/ Christine P. O'Hearn

                                      United States District Judge